UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE GEOVANNI LEMUS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NATHAN AND MORGAN, INC., dba Korea Town Plaza Food Court,<br><br>    Defendant. | Case No. 2:12-cv-00681-MMD-GWF<br><br>ORDER<br><br>(Plf.'s Motion for Default Judgment – dkt. no. 8) |

**I.  SUMMARY**

Before the Court is Plaintiffs' Motion for Default Judgment.  (Dkt. no. 8.) Defendant Nathan and Morgan, Inc. has not responded.

**II.  BACKGROUND**

On April 24, 2012, Plaintiffs, former employees at Defendant's restaurant, filed this lawsuit seeking unpaid minimum wages and overtime compensation, liquidated damages, attorneys' fees, and costs in accordance with 29 U.S.C. § 206(a)(1)(C) (federal minimum wage requirement), 29 U.S.C. § 207(a)(1) (federal overtime wage requirement), and 29 U.S.C. § 216(b) (penalties).  Plaintiffs seek $81,203.14[1] in

---

[1] Although Plaintiffs request $82,492.04 in total damages (dkt. no. 1-1 at 1), this calculation is incorrect due to miscalculations in Mr. Lemus's actual pay and federally mandated pay. Based on the information provided, Mr. Lemus's actual pay was
*(fn. cont…)*

1  damages: $39,875.26 in favor of Jose Geovanni Lemus; $20,663.94 in favor of Jose P.
2  Sibrian; and $20,663.94 in favor of Jose Hector Orellana.  Furthermore, Plaintiffs'
3  request $5,030.75 for attorneys' fees and costs. (Dkt. no. 8 at 1, 8-9.)

4  On April 25, 2012, Plaintiffs served Defendant with the Summons and Complaint.
5  (Dkt. no. 5 at 2.)  Accordingly, Federal Rule of Civil Procedure 12(a) required Defendant
6  to file an answer or responsive pleading on or before May 16, 2012.  On May 14, 2012,
7  Plaintiffs mailed Defendant a Three Day Notice of Intent to Default, informing Defendant
8  of Plaintiffs' intent to move for default judgment if Defendant did not file an answer or
9  responsive pleading by May 21, 2012.  (Dkt. no. 6.)  Plaintiffs allege that defense
10 counsel requested an extension to file an answer, which Plaintiffs' counsel allegedly
11 granted via e-mail on May 18, 2012.  (Dkt. nos. 8 at 9 and 8-2 at 2.)  The extension gave
12 Defendant until May 28, 2012, at 5:00pm to answer.  (Dkt. no. 8-2 at 2.)  On May 29,
13 2012, Plaintiff moved for Entry of Clerk's Default (dkt. no. 7), which was entered on May
14 30, 2012, (dkt. no. 9), and filed its Motion for Default Judgment (dkt. no. 8).  Defendant
15 has not filed any documents in this case.

16 **A.    Jose Geovanni Lemus**

17 From September 10, 2010, to February 8, 2012 (73.71 weeks), Mr. Lemus worked
18 12 hours a day, 6 days a week, for a total of 72 hours.  (Dkt. no. 8-1 at 2.)  During that
19 time, Defendant paid Mr. Lemus $750.00 every two weeks (dkt. no. 8-1 at 3), or $5.21
20 per hour, for a total of $27,641.25.  From February 9, 2012 to April 17, 2012 (9.71
21 weeks), Mr. Lemus worked for Defendant 11 hours a day, 5 days a week, for a total of
22 55 hours per week.  (Dkt. no. 8-1 at 3.)  During that time, Defendant paid Mr. Lemus
23 $969.25 every two weeks, or $8.81 per hour, for a total of $4,705.71.  (Dkt. no. 8-1 at 3.)
24 In total, Mr. Lemus received $32,346.96[2] for the time he worked for Defendant.

---

*(…fn. cont.)*
$32,346.96, not $32,669.46, and his federally mandated pay was $52,284.59 not $53,251.54.

[2]This number does not reflect the number provided in the Complaint (dkt. no. 1 at 3).  Rather, this number is the correct sum of $27,641.25 and $4,705.71.

Pursuant to 29 U.S.C. § 206(a)(1)(C) and § 207(a)(1), Mr. Lemus was entitled to receive at least $7.25 per hour (minimum wage) up to forty hours per week and at least $10.875 per hour (1.5 times his regular rate) for every hour worked in excess of forty hours per week. Accordingly, Mr. Lemus was entitled to $46,984.93[3] for the time he worked from September 10, 2010, to February 8, 2012, and $5,299.66[4] for the time he worked from February 9, 2012 to April 17, 2012. Therefore, Defendant was required to pay Mr. Lemus $52,284.59 instead of $32,346.96, a difference of $19,937.63.

### B.   Jose P. Sibrian and Jose Hector Orellana

From April 25, 2010, to January 27, 2011 (39.51 weeks), Mr. Sibrian and Mr. Orellana worked 12 hours a day, 6 days a week, for a total of 72 hours. (Dkt. no. 8-1 at 5, 8.) During that time, Defendant paid Mr. Sibrian and Mr. Orellana $750.00 every two weeks, or $5.21 per hour, for a total of $14,816.25. (Dkt. no. 8-1 at 6, 9.) Pursuant to U.S.C. § 206(a)(1)(C) and § 207(a)(1), Defendant was required to pay Mr. Sibrian and

///

///

---

[3] Pursuant to 29 U.S.C. § 207(a)(1), a person who works in excess of forty hours a week must be compensated at a rate not less than one and one-half times the regular rate at which he or she is employed. This means that a person who works 72 hours per week should be compensated at least $638.00 per week: $7.25 per hour (minimum wage) for the first 40 hours, plus $10.875 per hour (1.5 times the regular rate) for the additional 32 hours. Mr. Lemus worked 72 hours a week for 73 weeks and thus should have earned $46,574.00. In the 74th week, Mr. Lemus only worked 51.12 hours (.71 multiplied by 72, the number of hours Mr. Lemus would have worked had he worked the whole week). Accordingly, Mr. Lemus should have earned $410.93 for the 74th week: $7.25 per hour for the first 40 hours plus $10.875 per hour for the additional 11.12 hours. In sum, Mr. Lemus should have earned $46,984.93 for 73.31 weeks of work at 72 hours per week.

[4] From February 9, 2012 to April 17, 2012, Mr. Lemus worked 55 hours a week at a rate of $8.81 per hour. Accordingly, Defendant was required to compensate Mr. Lemus at least $550.625 per week: $8.81 per hour for the first 40 hours plus $13.215 ($8.81 multiplied by 1.5) per hour for the additional 15 hours. Mr. Lemus worked 55 hours for 9 weeks and thus, should have earned $4,955.625. In the 10th week, Mr. Lemus only worked 39.05 hours (.71 multiplied by 55, the number of hours Mr. Lemus would have worked had he worked the whole week). Accordingly, Mr. Lemus should have earned $344.0305 for the 10th week: $8.81 per hour for 39.05 hours. In Sum, Mr. Lemus should have earned $5,299.66 for 9.71 weeks of work at 55 hours per week.

1  Mr. Orellana $25,148.22[5] instead of $14,816.25, a difference of $10,331.97.

## III.  DISCUSSION

### A.  Legal Standard

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

---

[5] Mr. Sibrian and Mr. Orellana worked 72 hours a week for 39 weeks and thus, each should have earned $24,882.00. In the 40th week, Mr. Sibrian and Mr. Orellana only worked 36.72 hours (.51 multiplied by 72). Accordingly, Mr. Sibrian and Mr. Orellana should have earned $266.22 for the 40th week of work: $7.25 per hour for 36.72 hours. In sum, Mr. Sibrian and Mr. Orellana should have each earned $25,148.22 for 39.51 weeks of work at 72 hours per week.

### A. Prejudice

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Plaintiffs served Defendant with the Summons and Complaint on April 25, 2012 (dkt. no. 5), which set the due date for Defendant's answer on May 16, 2012. On May 14, 2012, Plaintiffs mailed Defendant a Three Day Notice of Intent to Take Default. (Dkt. no. 6). On May 28, 2012, Plaintiffs responded to defense counsel's alleged request for an extension (dkt. no. 8 at 9) by extending the deadline to file an answer or responsive pleading to May 28, 2012 at 5:00pm. (Dkt. no. 8-2 at 2.) However, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to appear in this action, and the likelihood that Defendant will continue to refuse to compensate Plaintiffs, the possibility of prejudice to Plaintiffs in the absence of a default judgment is great. Thus, this *Eitel* factor weighs in favor of entering default judgment.

### B. Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see* Fed. R. Civ. P. 8. In the instant action, Plaintiffs assert the following claims: (1) unpaid minimum wages in violation of 29 U.S.C. § 206(a)(1)(C); and (2) unpaid overtime compensation in violation of 29 U.S.C. § 207(a)(1). (Dkt. no. 1 at 1.) Plaintiffs allege that they are employees subject to the Fair Labor Standard Act's ("FLSA") minimum wage (29 U.S.C. § 206(a)(1)(c)) and overtime (29 U.S.C. § 207(a)(1)) requirements because Defendant is engaged in interstate commerce and accepts credit card payments.[6] (Dkt. no. 1 at 1-2.)

---

[6]While plaintiffs do not explicitly allege individual or enterprise coverage, restaurant employees have been held to receive FLSA protection through enterprise coverage where the restaurant uses materials that at some point traveled in interstate *(fn. cont…)*

Pursuant to 29 U.S.C. § 206(a)(1)(C), every employer is required to pay "each of his employees who in any workweek is . . . employed in an enterprise engaged in commerce . . . $7.25 an hour." Here, Defendant paid Mr. Lemus $5.21 per hour from September 10, 2010, to February 8, 2012, and Mr. Sibrian and Mr. Orellana $5.21 per hour from April 25, 2010, to January 27, 2011. Accordingly, Defendant did not pay Plaintiffs in accordance with the federal minimum wage requirement.

Pursuant to 29 U.S.C. § 207(a)(1), every employee "who in any workweek is . . . employed in an enterprise engage in commerce . . . for a workweek longer than forty hours" must receive "compensation for his employment in excess of [forty hours] at a rate not less than *one and one-half times the regular rate* at which he is employed" (emphasis added). In other words, employers are required to compensate their employees at a minimum of $10.875[7] per hour for every hour worked in excess of forty hours per week. From September 10, 2010, to February 8, 2012, Mr. Lemus worked 32 additional hours per week at his regular $5.21 rate of pay. From February 9, 2012, to April 17, 2012, Mr. Lemus worked 55 additional hours per week at his regular $8.81 rate of pay. From April 25, 2010, to January 27, 2011, Mr. Sibrian and Mr. Orellana worked 32 additional hours per week at their regular $5.21 rate of pay. Therefore, Defendant did not pay Plaintiffs in accordance with the federal overtime wage requirement.

---

*(…fn. cont.)*
commerce. *Diaz v. Jaguar Restaurant Group, LLC*, 649 F. Supp. 2d 1343,1355 (S.D. Fla. 2009). In order to invoke the protections offered by the FLSA, plaintiffs must satisfy the requirement for either individual or enterprise coverage. *Id.* at 1346. Enterprise coverage exists where the enterprise has at least two employees recurrently "handling, selling, or otherwise working on goods or *materials* that *have been moved* in . . . commerce by any person." *Id.* (citing 29 U.S.C. § 203(s)(1)(A)) (emphasis added). "The most essential 'materials' required to operate a typical restaurant . . . have undoubtedly traveled in interstate or foreign commerce." *Id.* at 1347. Restaurants use "heavy appliances for food preparation, and rel[y] on food products and beverages that originate in different parts of the country and, indeed, different parts of the world." *Id.* Therefore, Plaintiffs allegation that Defendant engages in commerce by operating a food court restaurant is sufficient to establish coverage under the FLSA. (Dkt. no. 1 at 1-2.)

[7]Since $7.25 is the federal minimum regular rate of pay, $10.875 ($7.25 multiplied by 1.5) is the federal minimum overtime pay.

In light of the lenient pleading standards under Fed. R. Civ. P. 8(a), the Complaint sufficiently gives fair notice to Defendant of Plaintiffs' claims under the Fair Labor Standard Act (FLSA). (Dkt. no. 1 at 1-6.)  *See Takacs v. A.G. Edwards and Sons, Inc.*, 444 F. Supp. 2d 1100, 1107 (S.D. Cal. 2006).  The Complaint cites to 29 U.S.C. § 206(a)(1)(C) and § 207(a)(1), and sets forth specific facts, including employment dates, the number of hours worked each week, biweekly earnings, and total earnings, to support Plaintiffs' claim that Defendant did not pay them wages and overtime in accordance with federal law.  (Dkt. no. 1 at 1-6.)  Furthermore, because the allegations in the Complaint indicate a strong likelihood that Plaintiffs will succeed on the merits, the second and third *Eitel* factors favor entering a default judgment.

### C.  Sum of Money at Stake

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  Under 29 U.S.C. § 216(b), "[a]ny employer who violates the provisions of section 206 and section 207 of this title shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  Furthermore, "[t]he court in such action shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  § 216(b).

Plaintiffs seek default judgment in the amount of $81,203.14, not including attorney's fees and costs.  Mr. Lemus seeks $19,937.63 in special damages and $19,937.63 in liquidated damages.  Mr. Sibrian and Mr. Orellana each seek $10,331.97 in special damages and $10,331.97 in liquidated damages.  Furthermore, Plaintiffs request $5,030.75 for attorney's fees and costs.  Because Plaintiffs demonstrate a basis for their requested monetary relief, the fourth *Eitel* factor favors Plaintiffs.

### D.  Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In an FLSA action, the plaintiff bears

the burden of proving "as a matter of just and reasonable inference that he or she performed work for an employer, and was not properly compensated." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1060 (D. Or. 2010) (citing *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998)). However, "[o]nce the plaintiff proves a prima facie case, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference drawn by plaintiff's evidence." *Chao*, 709 F. Supp. 2d at 1060 (citing *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986)). "The burden of record-keeping is on the employer." *Peterson v. Snodgrass*, 683 F. Supp. 2d 1107, 1126 (D. Or. 2010) (citing 29 U.S.C. § 211(c)).

Since Defendant has failed to respond in light of its burden to produce payroll records, the Court cannot infer a dispute of facts on the material issues here. Given the sufficiency of the Complaint, "no genuine dispute of material facts would prejudice granting Plaintiff's motion." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Therefore, the fifth *Eitel* factor favors Plaintiffs.

### E. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. The evidence shows that Plaintiffs properly served Defendant with the Summons and Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Dkt. no. 5 at 2.); *see* Fed. R. Civ. P. 4. Moreover, defense counsel allegedly received a 12-day extension to file an answer or responsive pleading. (Dkt. no. 6 at 1.) Therefore, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect.

### F. Decision on the Merits

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure

to answer Plaintiffs' complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defendants.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Default Judgment is GRANTED. The Clerk of the Court shall enter judgment against the Defendant in the amount of $86,233.89 plus accrued interest from the date of the judgment until paid.

DATED THIS 27th day of September 2012.

_____
UNITED STATES DISTRICT JUDGE